IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| REBECCA WADDELL, et al., | : | Case No. 1:22-cv-635 |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| v. | : | |
| RANDY LEWIS, et al., | : | |
| Defendants. | : | |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS (Doc. 8)

This matter is before the Court on Defendants Village of Coal Grove, Ohio, and Randy Lewis' Partial Motion to Dismiss (Doc. 8). Plaintiffs filed a Response in Opposition (Doc. 10), to which Defendants filed a Reply in Support (Doc. 11). Thus, this matter is ripe for the Court's review. For the following reasons, Defendants' Partial Motion to Dismiss (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART**.

### FACTS AS ALLEGED AND PROCEDURAL POSTURE

On November 4, 2021, Defendant Randy Lewis, who was then the Police Chief for the Village of Coal Grove, arrived at Plaintiffs Rebecca Waddell and Matthew Miller's residence. (Compl., Doc. 1, ¶¶ 9, 13.) Lewis was there to address a refrigerator on the back porch. (*Id.* at ¶ 13.) After a brief discussion, Waddell asked Lewis to leave. (*Id.* at ¶ 14.) Instead, Lewis began banging on the front door. (*Id.* at ¶ 15.) This prompted Miller to approach Lewis, and the two discussed the refrigerator on the back porch. (*Id.* at ¶¶ 16-17.) At this point, Lewis requested back-up. (*Id.* at ¶ 18.) So, Defendant Scott Hatfield – a

sheriff's deputy with the Lawrence County Sheriff's Office—arrived on the scene. (*Id.* at ¶¶ 11, 18.)

Things escalated from there. Lewis placed Waddell under arrest—allegedly without proper authority. (Compl., Doc. 1, ¶ 19.) Waddell protested the arrest while Miller attempted to calm the situation. (*Id.* at ¶ 20.) Hatfield then struck Miller in the face. (*Id.* at ¶ 21.) Following this blow, Lewis threw Miller from the front porch, which injured Miller. (*Id.* at ¶ 22.) Lewis then proceeded to pepper spray Miller twice in the face as he was on the ground. (*Id.* at ¶ 23.) As for Waddell, she was struck between the shoulder blades by Hatfield while she was handcuffed. (*Id.* at ¶ 24.) Miller and Waddell were then arrested and taken to the Lawrence County Jail. (*Id.* at ¶ 26.) Lewis instituted charges against Miller and Waddell "[d]espite knowing and understanding that the allegations contained in the criminal complaint were untrue and without probable cause." (*Id.* at ¶¶ 27, 80.) The charges were eventually dismissed by the Lawrence County Prosecuting Attorney. (*Id.* at ¶ 27.)

Relevant to this Order, Plaintiffs bring federal and state law claims against Defendants Randy Lewis, in both his official and individual capacity, and the Village of Coal Grove, Ohio. (Compl., Doc. 1.) Plaintiffs bring 42 U.S.C. § 1983 claims for excessive force, unlawful arrest and seizure, false imprisonment, and malicious prosecution against Lewis. (*Id.* at ¶¶ 28-46, 84-88.) Additionally, Plaintiffs bring state law claims for false imprisonment, assault, battery, intentional infliction of emotional distress, and malicious prosecution against Lewis. (*Id.* at ¶¶ 47-51, 62-83.) Against the Village of Coal Grove, Plaintiffs bring a § 1983 *Monell* claim, as well as state law claims for assault, battery,

2

intentional infliction of emotional distress, malicious prosecution, and negligent retention. (*Id.* at ¶¶ 52-83, 89-93.) Lewis and the Village of Coal Grove now move to partially dismiss the claims brought against them. (Motion to Dismiss, Doc. 8.)

## LAW

The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Courts accept all allegations of material fact as true and must construe such allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 554-55; *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Defendants Lewis and the Village of Coal Grove seek dismissal of the following claims: (1) all claims against Lewis in his official capacity; (2) § 1983 claims against the Village of Coal Grove, (3) the malicious prosecution claim under § 1983, (4) all state law claims against the Village of Coal Grove, and (5) all state law claims against Lewis in his individual capacity. (*See* Motion to Dismiss, Doc. 8.) The Court will address each argument in turn.

3

## I. All Claims Against Lewis in his Official Capacity

As an initial matter, Defendants argue that claims against Lewis in his official capacity should be dismissed because he is no longer serving as Chief of Police for the Village of Coal Grove. (Motion to Dismiss, Doc. 8, Pg. ID 34-35.) Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." Instead, "[t]he officer's successor is automatically substituted as a party." *Id.* Plaintiffs do not object to such substitution. (Response, Doc. 10, Pg. ID 64-65.)

However, substitution is unnecessary here because Plaintiffs' claims against Lewis in his official capacity are duplicative with the viable claims against the Village of Coal Grove. Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (quotation omitted). Accordingly, "[c]ourts regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit." *Johnson v. Wash. Cnty. Career Ctr.*, No. 2:10-CV-076, 2010 WL 2570929, at *4 (S.D. Ohio June 22, 2010); *see also Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 634 (6th Cir. 2012). As such, the claims against Lewis in his official capacity are dismissed as duplicative.

## II. Section 1983 Claims Against the Village of Coal Grove

Defendants seek dismissal of Plaintiffs' § 1983 claims against the Village of Coal Grove. (Motion to Dismiss, Doc. 8, Pg. ID 36-43.) Municipalities cannot be held vicariously liable for their employees' actions under § 1983. *Monell v. Dep't of Soc. Servs.*,

4

436 U.S. 658, 691-94 (1978). Instead, a municipality may only be liable under § 1983 for official customs or policies that deprive a plaintiff of his or her constitutional rights. *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted). The policy or custom must have been the "moving force of the constitutional violation." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981).

A plaintiff may demonstrate an official policy or custom in one of four ways: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance of or acquiescence to federal rights violations." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (cleaned up). Plaintiffs' Complaint appears to potentially touch upon each of these avenues of pleading a *Monell* claim, so the Court will address each.

### A. Existence of an Illegal Official Policy or Legislative Enactment

First, the Court will consider Plaintiffs' § 1983 claim as it pertains to Plaintiffs' allegations that the Village of Coal Grove had an illegal official policy or legislative enactment. To hold the Village of Coal Grove liable under the official policy theory, Plaintiffs must: "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [their] particular injury was incurred due to the execution of that policy." *Verecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (quotation omitted).

5

Plaintiffs allege that:

> Defendant Lewis and the Village of Coal Grove, Ohio, implemented customs and policies for training and supervision of Coal Grove Police Department police officers on searches and seizures and use of force, that, on their face, violate the Fourth Amendment.
>
> Alternatively, upon information and belief, the aforementioned defendants implemented otherwise facially valid customs and policies in a manner such that constitutional violations were likely to be and were visited upon those inhabiting, visiting, or otherwise within the jurisdictional limits of Coal Grove, Ohio, including Ms. Waddell and Mr. Miller.

(Compl., Doc. 1, ¶ 59.)

While Plaintiffs allege that the Coal Grove Police Department implemented customs and policies that violate the Fourth Amendment, they fail to provide specific factual allegations to support this legal conclusion. *See Twombly*, 550 U.S. at 555. Plaintiffs have not specified any purportedly illegal customs or policies by the Village of Coal Grove. (*See* Compl., Doc. 1.) As such, Plaintiffs' allegations are insufficient for pleading a *Monell* claim under an official policy theory. *See, e.g., Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 436 (6th Cir. 2013); *Campbell v. Hamilton Cnty.*, No. 1:22-CV-315, 2023 WL 6295803, at *8 (S.D. Ohio Sept. 27, 2023) (dismissing *Monell* claim because allegations fell short of specifying the policy) (collecting cases).

### B. Existence of a Policy of Inadequate Training or Supervision

Next, the Court will consider Plaintiffs' § 1983 claim as it pertains to allegations that the Village of Coal Grove had a policy of inadequate training or supervision. To hold a municipality liable for failing to train its employees, "a plaintiff must establish that: (1) the [municipality's] training program was inadequate for the tasks that officers must

6

perform; (2) the inadequacy was the result of the [municipality's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quotations omitted). While Plaintiffs allege that the "Village of Coal Grove [] failed to adequately train and/or supervise Defendant Lewis," Plaintiffs allege no other facts to support this allegation. (Compl., Doc. 1, ¶ 55.) Thus, this is an impermissibly conclusory allegation and fails to plausibly state an inadequate training claim. *See Westbrook v. City of Cincinnati*, 667 F. Supp. 3d 665, 670 (S.D. Ohio 2023).

### C. Custom of Tolerance or Acquiescence to Federal Rights Violations

Next, the Court will consider Plaintiffs' § 1983 claim as it pertains to allegations that the Village of Coal Grove had a custom of tolerance or acquiescence to federal rights violations. To demonstrate the existence of a custom of tolerance or acquiesce to federal rights violations, a plaintiff must show: "(1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the 'moving force' or direct causal link in the constitutional deprivation." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quotation omitted).

This theory of liability is inapplicable here because Plaintiffs' allegations are conclusory and do not speak to a clear and persistent pattern of illegal activity. The Complaint alleges that "[D]efendants implemented otherwise facially valid customs and

policies in a manner such that constitutional violations were likely to be and were visited upon those inhabiting, visiting, or otherwise within the jurisdictional limits of Coal Grove, Ohio, including Ms. Waddell and Mr. Miller." (Compl., Doc. 1, ¶ 59.) Consequently, Plaintiffs do not sufficiently plead a tolerance or acquiesce theory for *Monell* liability. *See Thomas*, 398 F.3d at 432 (rejecting proposition that "one instance of potential misconduct" could show "a clear and persistent pattern" of constitutional violations).

### D. Ratification

Finally, the Court will consider Plaintiffs' § 1983 claim as it pertains to allegations that the Village of Coal Grove ratified Lewis' actions. The ratification theory of municipal liability "may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A plaintiff must demonstrate (1) that "an individual with policymaking authority issue[d] a final decision affirming a subordinate's decision on the merits or otherwise, and thereby adopting it as municipal policy," or (2) that "a policymaker fail[ed] to meaningfully investigate the acts of a subordinate." *Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 729 (S.D. Ohio 2018) (citations omitted).

Plaintiffs allege that the Village of Coal Grove "was aware of the misconduct and malicious actions of Defendant Lewis and ratified these actions." (Compl., Doc. 1, ¶ 87.) More specifically, Plaintiffs allege that the Village of Coal Grove ratified Lewis' conduct "by allowing him to arrest Ms. Waddell without authority or right to do so and by retaining him after the incident on November 4, 2021." (*Id.* at ¶ 57.)

Defendants argue that Plaintiffs' allegations are conclusory and do not show "that the Village of Coal Grove knew that Defendant Lewis was going to take the alleged illegal actions and approved it." (Motion to Dismiss, Doc. 8, Pg. ID 42.) The Court disagrees. Plaintiffs' allegation that the Village of Coal Grove "*allowed* him to arrest Ms. Waddell without authority or right to do so" permits the Court to make the reasonable inference that the Village of Coal Grove approved Lewis' acts before they were taken. Additionally, because Lewis was the police chief, it is plausible that he had final policy-making authority relevant to the events in question. *See, e.g., Kammeyer v. City of Sharonville, Ohio*, No. 1:01-CV-649, 2006 WL 1133241, at *11 (S.D. Ohio Apr. 27, 2006). Thus, Plaintiffs have adequately alleged ratification at this stage of litigation and may proceed on their § 1983 claim against the Village of Coal Grove under this theory.

### III.    Section 1983 Malicious Prosecution Claim

The Court now considers Plaintiffs' malicious prosecution claim under § 1983. Such a claim arises through the Fourth Amendment and "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Spurlock v. Satterfield*, 167 F.3d 995, 1006 n.19 (6th Cir. 1999); *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (quotations omitted). A malicious prosecution claim under § 1983 involves four elements: (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute," (2) "there was a lack of probable cause for the criminal prosecution," (3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial

seizure," and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (cleaned up).

Defendants concede that Plaintiffs have satisfactorily pled three of these elements but argue that "the Complaint does not allege a deprivation of liberty separate from the initial seizure." (Motion to Dismiss, Doc. 8, Pg. ID 36.) The Court agrees. Pertinent here, the Complaint only alleges:

> Ms. Waddell and Mr. Miller were falsely arrested by Defendant Lewis and Hatfield and transported to the Lawrence County Jail in Ironton, Ohio. Criminal charges were then instituted against both Ms. Waddell and Mr. Miller by Defendant Lewis and those charges were eventually dismissed by the Lawrence County (OH) Prosecuting Attorney.

(Compl., Doc. 1, ¶¶ 26-27.)

The Complaint fails to allege a deprivation of liberty beyond Plaintiffs' initial arrest. And, "an initial arrest alone is an insufficient deprivation of liberty to support a claim for malicious prosecution." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 877 (6th Cir. 2020) (quotation omitted); *see also DiPasquale v. Hawkins*, No. 3:16-CV-219, 2020 WL 2906433, at *8 (S.D. Ohio June 3, 2020) ("An initial arrest and related detention are legally insufficient to satisfy the deprivation of liberty element of a malicious prosecution claim.") (collecting cases). Thus, Plaintiffs fail to allege the third element required for a malicious prosecution claim.

Although Plaintiffs now reference two new allegations in an attempt to demonstrate a separate deprivation of liberty, neither can be considered by the Court. First, Plaintiffs argue that they "were made to appear in municipal court." (Response, Doc. 10, Pg. ID 65.) However, the Court cannot consider this statement because it was not

10

included in the Complaint. *See Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016). Plaintiffs also ask the Court to infer that they were "on a bond as part of a pretrial release program prior to [their] appearance in the Lawrence County Municipal Court." (Response, Doc. 10, Pg. ID 65.) But, even taking the facts in the Complaint as true and construing them in Plaintiffs' favor, the Court declines to infer specific bond conditions not in the Complaint. *See, e.g., Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 456 (N.D. Ohio 2012). To be sure, Plaintiffs do not even allege in the Complaint that they were ever required to appear in court. (*See* Compl., Doc. 1.) Plaintiffs have failed to plead a deprivation of liberty beyond the initial arrest, so the Court dismisses the § 1983 malicious prosecution claim.

## IV. State Law Claims Against the Village of Coal Grove

The Court now turns to Plaintiffs' state law claims against the Village of Coal Grove, which Defendants contend are barred by immunity. (Motion to Dismiss, Doc. 8, Pg. ID 43-47.)

Ohio Revised Code § 2744.02(A)(1) provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." There are five exceptions to this form of immunity: (1) injury caused by an employee's negligent operation of motor vehicles within the scope of their employment; (2) an employee's negligence with respect to proprietary functions of the political subdivision; (3) negligent failure to keep roads in repair; (4) an employee's negligence on the grounds of buildings

11

used for government functions due to physical defects; and (5) where liability is expressly imposed by statute. Ohio Rev. Code § 2744.02(B).

The Village of Coal Grove falls within the scope of immunity protection under § 2744.02. As Plaintiffs allege, the "Village of Coal Grove, Ohio is a municipality and political subdivision within the meaning of the Ohio Revised Code." (Compl., Doc. 1, ¶ 10.) Because political subdivisions include municipalities under § 2744.01(F), the Village of Coal Grove qualifies as a political subdivision. The conduct at issue is also covered by the statute since providing police services qualifies as a government function for purposes of immunity. Ohio Rev. Code § 2744.01(C)(2)(a); *see also Williams v. Shawnee Twp.*, 207 N.E.3d 853, 862 (Ohio Ct. App. 2023).

None of the exceptions to immunity are applicable here. *See* Ohio Rev. Code § 2744.02(B). Plaintiffs' negligent retention claim is not covered by any exception. *See Bevelacqua v. Tancak*, 204 N.E.3d 12, 26 (Ohio Ct. App. 2022). Plaintiffs' claims for malicious prosecution, intentional infliction of emotional distress, battery, and assault fare no better because "[n]one of the enumerated exceptions deal with intentional conduct." *Yankovitz v. Greater Cleveland Reg'l Transit Auth.*, 222 N.E.3d 104, 116 (Ohio Ct. App. 2023) (no exception for intentional infliction of emotional distress); *see also Harris v. Sutton*, 918 N.E.2d 181, 185-86 (Ohio Ct. App. 2009) (no exception for malicious prosecution); *Griffits v. Newburgh Hts.*, No. 91428, 2009 WL 280376, at *3 (Ohio Ct. App. 2009) (no exception for assault or battery) (collecting cases). Thus, the Village of Coal Grove is entitled to immunity, and Plaintiffs' state law claims against the Village of Coal Grove must be dismissed.

V.   **State Law Claims Against Lewis in his Individual Capacity**

Finally, the Court considers Plaintiffs' state law claims brought against Lewis in his individual capacity. Defendants contend that these claims are similarly barred by immunity or otherwise fail to state a claim. (Motion to Dismiss, Doc. 8, Pg. ID 47-49.)

### A. Assault, Battery, Intentional Infliction of Emotional Distress, and Malicious Prosecution Claims

The Court first considers Plaintiffs' assault, battery, intentional infliction of emotional distress, and malicious prosecution claims against Lewis in his individual capacity, which Defendants argue are barred by immunity. (Motion to Dismiss, Doc. 8, Pg. ID 47-48.) Under Ohio law, an employee of a municipality is immune from civil liability unless one of three exceptions applies: (1) "the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities," (2) "were [made] with malicious purpose, in bad faith, or in a wanton or reckless manner," or (3) "liability is expressly imposed upon the employee by a section of the Revised Code." Ohio Rev. Code § 2744.03(A)(6).

The parties dispute only whether the second exception applies. While Defendants acknowledge that the Complaint alleges that Lewis acted with a malicious purpose, they argue that such allegations are nothing more than bare conclusions. (Motion to Dismiss, Doc. 8, Pg. ID 47-48.) The Court disagrees.

Looking first to Plaintiffs' claims for assault, battery, and intentional infliction of emotional distress, Plaintiffs allege that Lewis acted with "malicious purpose, in bad faith, and in a reckless or wanton manner." (Compl., Doc. 1, ¶¶ 66, 72, 77.) Plaintiffs

13

support this conclusion with specific factual allegations. To begin, Plaintiffs allege that Waddell was improperly arrested as Miller attempted to calm the situation. (*Id.* at ¶¶ 19-20.) Further, Lewis allegedly injured Miller by throwing him from the porch after Hatfield had already struck Miller in the face. (*Id.* at ¶¶ 21-22.) While Miller was on the ground, Lewis pepper sprayed him twice in the face. (*Id.* at ¶ 23.) These allegations support a plausible inference that Lewis acted with "malicious purpose, in bad faith, or in a wanton or reckless manner" to prevent dismissal on immunity grounds.

Plaintiffs' state law claim for malicious prosecution has similarly been adequately pled. The Complaint alleges that "Lewis acted with true and deliberate malice when filing" the criminal charges against Plaintiffs. (Compl., Doc. 1, ¶ 81.) Plaintiffs support this allegation of malice by alleging that Lewis filed these charges "[d]espite knowing and understanding that the allegations contained in the criminal complaint were untrue and without probable cause." (*Id.* at ¶ 80.) Again, these factual allegations are sufficient to show that Lewis acted with "malicious purpose, in bad faith, or in a wanton or reckless manner."

Accordingly, the Court will not dismiss Plaintiffs' state claims of assault, battery, intentional infliction of emotional distress, and malicious prosecution against Lewis in his individual capacity.

### B. False Imprisonment Claim

Finally, the Court will consider Plaintiffs' false imprisonment claim against Lewis in his individual capacity, which Defendants argue should be dismissed because such a claim cannot proceed against a government actor. (Motion to Dismiss, Doc. 8, Pg. ID 48-

49.) Plaintiffs fail to address or counter this argument in their response. (*See* Response, Doc. 10.) "Where a party fails to support its claim in a brief opposing a motion to dismiss, district courts are free to treat those claims as abandoned and dismiss them." *Pierre Invs., Inc. v. Fifth Third Bancorp*, No. 1:22-CV-155, 2022 WL 6764494, at *5 (S.D. Ohio Oct. 11, 2022), *aff'd*, No. 23-3269, 2023 WL 8373001 (6th Cir. Dec. 4, 2023); *see also Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007).

But, even if Plaintiffs had not abandoned this claim, the Court agrees with Defendants' argument. Under Ohio law, "any claim for false imprisonment against a government actor fails." *Snyder v. United States*, 990 F. Supp. 2d 818, 829 (S.D. Ohio 2014), *aff'd*, 590 F. App'x 505 (6th Cir. 2014) (citing *Rogers v. Barbera*, 164 N.E.2d 162, 164-65 (Ohio 1960)). Plaintiffs allege that Lewis was serving as the police chief for the Village of Coal Grove and "acting under color of law within the course and scope and in furtherance of his employment." (Compl., Doc. 1, ¶¶ 9, 48.) As such, this claim cannot proceed against Lewis because he was a government actor at the time of the incident. The Court dismisses Plaintiff's state law claim for false imprisonment against Lewis in his individual capacity.

## CONCLUSION

For the foregoing reasons, Defendants Village of Coal Grove and Randy Lewis' Partial Motion to Dismiss (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1) Plaintiffs' claims against Lewis in his official capacity are **DISMISSED**;

2) Plaintiffs' § 1983 claims against the Village of Coal Grove **SHALL PROCEED** only under the ratification theory and are otherwise **DISMISSED**;

3) Plaintiffs' § 1983 claim for malicious prosecution is **DISMISSED**;

4) Plaintiffs' state law claims against the Village of Coal Grove are **DISMISSED**;

5) Plaintiffs' assault, battery, intentional infliction of emotional distress, and malicious prosecution state law claims against Lewis in his individual capacity **SHALL PROCEED**; and

6) Plaintiffs' false imprisonment claim against Lewis in his individual capacity is **DISMISSED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*

JUDGE MATTHEW W. McFARLAND